**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| | * | |
| **DAVID PALLETT, III,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civ. No. MJM-25-1719** |
| **v.** | * | |
| | * | |
| **EUGENA WALLACE-TOMLINE, et al.,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

* * * * * * * * * *

**MEMORANDUM OPINION AND ORDER**

Plaintiff David Pallett III ("Plaintiff") filed this civil action against individual defendants Eugenia Wallace-Tomlin and Pamela Sterrette (together, "Individual Defendants") and Baltimore County, Maryland (all collectively, "Defendants") on May 30, 2025. ECF No. 1. Plaintiff filed an Amended Complaint on December 5, 2025, asserting claims for alleged violations of the Americans with Disabilities Act of 1990 (the "ADA") as amended by the Amendments Act of 2008, the Rehabilitation Act of 1973, the Eighth and Fourteenth Amendments to the United States Constitution, and Articles 24 and 26 of the Maryland Declaration of Rights, as well as negligence and gross negligence. ECF No. 16.

This matter is before the Court on Defendants' motion to dismiss the Amended Complaint or, alternatively, for summary judgment. ECF No. 17. Plaintiff filed a response in opposition. ECF No. 20. A hearing is not necessary to resolve the motion. *See* Loc. R. 105.6 (D. Md. 2025).

For the reasons stated herein, Defendants' motion is granted in part and denied in part. Plaintiff's claims for negligence and violation of Articles 24 and 26 of the Maryland Declaration of Rights are dismissed. All remaining counts of the Amended Complaint shall proceed.

## I. BACKGROUND

The following facts are drawn from allegations in Plaintiff's Amended Complaint. ECF No. 16 ("Am. Compl.").

In November 2021, Plaintiff was severely injured after being struck by a train. *Id.* ¶ 13. Among other injuries, Plaintiff suffered a compound fracture of his left femur, a pilon fracture of his right ankle, and bilateral arm injuries. *Id.* These injuries required multiple surgeries. *Id.* After approximately seven weeks of hospitalization, Plaintiff was transferred to a nursing facility, where he remained until mid-March 2022. *Id.*

Upon release from the nursing facility, Plaintiff's "ability to ambulate was severely restricted." *Id.* ¶ 14. His right ankle had been fused, he had limited strength in his left leg, and he required a cane to move about. *Id.* He also had limited use of his upper extremities, which reduced his ability to catch himself if he lost balance. *Id.* Plaintiff was unable to walk with a normal gait and struggled to maintain his balance when confronted with uneven surfaces, including stairs. *Id.* ¶ 15. According to Plaintiff, his disabilities and physical limitations were readily apparent upon visual inspection. *Id.* ¶ 19.

After pleading guilty to violating a protective order, Plaintiff was sentenced to 90 days of incarceration and was remanded to the custody of Baltimore County Detention Center ("BCDC") on May 19, 2022. *Id.* ¶ 20. Baltimore County contracts with PrimeCare Medical, Inc. ("PrimeCare") to provide inmate health services and allows PrimeCare to access BCDC's Jail

Management System ("JMS"), "which maintains new intake records, inmate movement, housing information, dietary requirements, work or program, and assignment information." *Id.* ¶¶ 60–61.

Plaintiff underwent a medical intake screening the day he entered Baltimore County custody. *Id.* ¶ 22. During the screening, Dionna Vanable-Fisher documented that Plaintiff had been struck by a train and had required an intensive-care hospitalization. *Id.* Vanable-Fisher further noted Plaintiff's mobility limitations in both his electronic health records and JMS. *Id.* ¶ 23. In a corresponding report, Vanable-Fisher answered "Yes" to the following question: "Is the patient's mobility restricted in any way or does the patient have any obvious deformities or handicaps?" Vanable-Fisher further specified that Plaintiff "walks with a cane and has a hard boot on left leg unable to flex left foot bones are fused together." *Id.*

Later that evening, at approximately 9:50 p.m., Motunrayo Dipeolu, CRNP completed a "Physical Form—14 Day/Initial CCC." *Id.* ¶ 24. Dipeolu documented Plaintiff's history of external fixation surgeries and multiple joint pain, and the presence of rods in his left upper arm and both lower extremities. *Id.* Dipeolu also noted an open surgical incision on Plaintiff's medial heel, that Plaintiff was wearing a walking boot on his right leg, and that he required a cane to ambulate. *Id.* ¶ 25.

Also on May 19, 2022, Tracy Brooks, CRNP prepared "DOJ – Identification of Special Needs Form." *Id.* ¶ 26. Brooks indicated that Plaintiff's physical condition necessitated accommodations and the initiation of "special housing" requirements to include "low[er] bunk" and "low[er] tier" restrictions. *Id.* The form indicated that these restrictions would remain in place until cleared by a physician or physician assistant. *Id.* Plaintiff alleges that Brooks entered these

restrictions as medical alerts in both his electronic health records and JMS.[1] *Id.* ¶ 28. Plaintiff further alleges that information regarding his housing restrictions was automatically emailed to designated staff members, including Defendant Eugenia Wallace-Tomlin. *Id.* ¶ 29. At all relevant times, Wallace-Tomlin served as a BCDC Classification Officer responsible for interviewing inmates, assessing their medical and security needs, and assigning appropriate housing placements. *Id.* ¶ 32.

On May 20, 2022, at approximately 12:27 p.m., Wallace-Tomlin conducted Plaintiff's initial classification interview. *Id.* ¶ 33. During the interview, Wallace-Tomlin personally observed Plaintiff's use of a cane and walking boot, as well as his impaired gait and mobility limitations. *Id.* Despite the lower-tier housing restriction entered by Brooks the previous day, Wallace-Tomlin allegedly declined to classify Plaintiff for lower-tier housing. *Id.* ¶ 35. Plaintiff alleges that BCDC had available first-floor housing and could have readily assigned him to a location that did not require him to use stairs. *Id.* ¶ 36.

On May 23, 2022, Defendant Pamela Sterrette, a correctional officer at BCDC, escorted Plaintiff to a new housing assignment identified as "BCDC-2P-DORM5-LOWER2." *Id.* ¶ 39. According to Plaintiff, Wallace-Tomlin "and/or" Sterrette assigned and placed Plaintiff in the Dorm 5 – Lower 2 cell, which was on the second floor/upper tier. *Id.* ¶¶ 49, 41.

On June 2, 2022, Plaintiff fell while descending the steps from his housing tier, and a medical code was called. *Id.* ¶¶ 46–48. At approximately 8:38 a.m., a physician assistant called 9-1-1. *Id.* ¶ 49. Emergency responders arrived approximately twelve minutes later and transported Plaintiff to Sinai Hospital. *Id.*

---

[1] Defendants dispute that Brooks entered the lower-tier restriction in JMS when Plaintiff was initially screened. They attach records to their motion that appear to show the lower-tier restriction was not entered until June 2, 2022. *See* ECF No. 17-1 at 2.

Plaintiff alleges that the fall caused serious and permanent injuries, including injuries to his neck, back, left hip, and shoulder, as well as damage to the orthopedic hardware previously implanted during his surgeries. *Id.* ¶ 50. Specifically, Plaintiff alleges that the intramedullary nail installed in his surgically repaired lower extremity was bent during the fall and that he now requires corrective surgery. *Id.* ¶ 51.

## II. STANDARD OF REVIEW

A motion to dismiss under Federal Rules of Civil Procedure Rule 12(b)(6) tests the sufficiency of a civil complaint. "To survive a Rule 12(b)(6) motion, a complaint must satisfy the pleading standard articulated in [Rule] 8(a)(2), which requires a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *View Point Med. Sys., LLC v. Athena Health, Inc.*, 9 F. Supp. 3d 588, 596 (D. Md. 2014) (citation omitted). A plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."[2] *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). When a movant files a motion to dismiss seeking summary judgment as alternative relief and presents matters outside the pleadings, Rule 12(d) permits the court to consider those matters and treat the motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

[2] When ruling on a Rule 12(b)(6) motion, a court may "consider documents that are explicitly incorporated into the complaint by reference" or "document[s] submitted by the movant" that are "integral to the complaint[,]" if "there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citations omitted); *accord Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015).

Generally, converting a motion to dismiss to a summary judgment motion is not appropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours v. Kolon Indus., Inc.*, 637 F3d 435, 448–49 (4th Cir. 2011). At the same time, the party opposing summary judgment "cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To assert a need for discovery to oppose a summary judgment motion, a non-movant is generally required to file an "affidavit or declaration," pursuant to Rule 56(d), stating that "it cannot present facts essential to justify its opposition[]" to the motion the merits. Fed. R. Civ. P. 56(d); *see also Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023). Even without such an affidavit, however, a district court may not grant summary judgment "when it otherwise has 'fair notice of . . . potential dispute[s] as to the sufficiency of the summary judgment record.'" *Id.* (citation omitted).

Here, Defendants styled their motion to dismiss, in the alternative, as one for summary judgment, ECF No. 17, placing Plaintiff on notice that the motion may be decided under Rule 56, *see Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). In response, Plaintiff's counsel filed a Rule 56(d) declaration asserting a need for discovery. *See* ECF 20-1 (Declaration of Anton L. Iamele). Plaintiff's counsel avers that he cannot adequately test the factual assertions contained in Defendants' affidavits and exhibits because critical information remains exclusively within Defendants' possession, custody, and control. *Id.* Specifically, counsel identifies several categories of discoverable information necessary to respond to Defendants' motion, including BCDC policies, procedures, and training materials governing: (1) JMS medical

alerts; (2) automated email alerts and distribution lists; (3) classification intake and housing assignment decisions; (4) accommodations for inmates with mobility restrictions, including lower-tier and lower-bunk requirements; (5) the allocation of responsibilities between custody, classification, and medical personnel; and (6) procedures for addressing housing assignments that conflict with medical restrictions. *Id.*

Defendants filed no reply and therefore do not presently dispute Plaintiff's Rule 56(d) showing. Given the early stage of the litigation, the absence of discovery, and the Fourth Circuit's general reluctance to grant summary judgment before the parties have an adequate opportunity for discovery, the Court finds that treatment of the motion as one for summary judgment would be inappropriate. Accordingly, this Court declines to consider any matters outside the Complaint and will analyze the motion under a Rule 12(b)(6) standard.

## III. DISCUSSION

### A. Counts I and II: ADA and Rehabilitation Act

In Counts I and II of the Amended Complaint, Plaintiff alleges that Baltimore County violated the ADA and the Rehabilitation Act by failing to provide a lower-tier housing placement as a reasonable accommodation for his disability, despite documented restrictions and obvious need. Defendants dispute Plaintiff's allegations and argue that he cannot show that Baltimore County is liable for violations of the ADA or Rehabilitation Act because his allegations are contradicted by JMS records. The Court cannot resolve the parties' factual disputes at the pleading stage. Defendants' motion is denied as to Counts I and II.

To seek recovery for violation of either the ADA or the Rehabilitation Act while in government custody, a plaintiff "must allege that (1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded

from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability." *Cartagena v. Lovell*, 103 F.4th 171, 184 (4th Cir. 2024) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005)); *see also* 42 U.S.C. § 12132; 29 U.S.C. § 794(a).[3] The third prong may be satisfied by a failure to make reasonable accommodations. *See Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503 n.5 (4th Cir. 2016) (citing *A Helping Hand, LLC v. Balt. Cnty., Md.*, 515 F.3d 356, 362 (4th Cir. 2008)).

"The ADA's reasonable accommodation requirement *usually* does not apply unless triggered by a request." *Jarboe v. Maryland Dep't of Pub. Safety & Corr. Servs.*, Civ. No. ELH-12-572, 2013 WL 1010357, at *19 (D. Md. Mar. 13, 2013) (quoting *Kiman v. New Hampshire Department of Corrections*, 451 F.3d 274, 283 (1st Cir. 2006) (emphasis in original)). But "sometimes a person's need for an accommodation will be obvious, and in those circumstances an explicit request for an accommodation is not required in order to establish the obligation to provide reasonable accommodations." *Id.* (citing *Kiman*, 451 F.3d at 283 (cleaned up)); *see also Davis v. Md. Dep't of Pub. Safety & Corr. Servs.*, Civ. No. DLB-24-1674, 2025 WL 1952517, at *5 (D. Md. July 16, 2025) (explaining that a defendant may be liable for failing to make reasonable accommodations "when the qualified individual with a disability has either asked for an accommodation or where the need for one is 'open and obvious'" (citations omitted)); *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 403–04 (D. Md. 2011) (explaining that a public entity is on notice that an individual needs an accommodation when it knows that an individual requires

[3] Courts in the Fourth Circuit generally analyze claims brought under Title II of the ADA and Section 504 of the Rehabilitation Act together, given their substantial similarity. *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1267 n.9 (4th Cir. 1995).

one, either because that need is obvious or because the individual requests an accommodation, and collecting citations).

Here, Plaintiff alleges enough facts to support a reasonable inference that his need for a reasonable accommodation was obvious and known to Baltimore County. Specifically, he alleges that, at intake, multiple medical staff members documented his severe mobility limitations, including his use of a cane, fused ankle, limited strength, and inability to navigate stairs safely. Am. Compl. ¶¶ 22–25, 34, 42, 64–72. Plaintiff further alleges that CRNP Brooks imposed lower-tier and lower-bunk restrictions and documented those restrictions in Plaintiff's medical records and JMS, and that the information was automatically transmitted to relevant BCDC staff, including Wallace-Tomlin. *Id.* ¶¶ 26–29. Plaintiff also alleges that Wallace-Tomlin personally observed his obvious mobility impairments during the classification interview, including his use of a cane and walking boot and his inability to ambulate with a normal gait. *Id.* ¶¶ 33–34. At this stage, the Court finds Plaintiff's allegations sufficient to establish that Baltimore County was aware of Plaintiff's need for a reasonable accommodation while in custody.

Defendants dispute that a lower-tier restriction was entered into JMS before Plaintiff's fall and attach records that appear to show the restriction was not entered until June 2, 2022. However, as discussed above, this Court declines to consider matters outside the pleadings at this stage. It would be improper for the Court to resolve the parties' factual dispute on a motion to dismiss. Moreover, Defendants did not file a reply brief and do not contest Plaintiff's argument that his need for accommodation was open and obvious.

Plaintiff further alleges that despite Baltimore County's awareness of his need for accommodation, Baltimore County assigned him to a second-floor housing unit that required him to navigate stairs, even though first-floor housing was available. Am. Compl. ¶¶ 35–36, 39.

Viewing the allegations in the light most favorable to Plaintiff, the assignment of a mobility-impaired inmate to upper-tier housing despite documented lower-tier restrictions plausibly constitutes a failure to provide a reasonable accommodation.

The Court concludes that Plaintiff states a plausible claim that Baltimore County failed to provide a reasonable accommodation in violation of the ADA and the Rehabilitation Act. The motion to dismiss Counts I and II is denied.

**B. Count III: 42 U.S.C. §1983**

In Count III of the Amended Complaint, Plaintiff asserts a claim against Individual Defendants under 42 U.S.C. § 1983 for violating his Eighth Amendment rights.[4] As explained below, the Court finds Plaintiff's Eighth Amendment claim to be plausible and denies Defendants' motion to dismiss it.

Under 42 U.S.C. § 1983, a plaintiff may file suit against any person who, acting under color of state law, subjects the plaintiff "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377, 383 (2012). Section 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017).

---

[4] As Defendants note, *see* ECF No. 17-1 at 7, 12, the Eighth Amendment—not the Fourteenth Amendment—governs Plaintiff's constitutional claim because he was convicted at the time of the incident, not a pretrial detainee. *See Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) (explaining that because the plaintiff was a "pretrial detainee and not a convicted prisoner," the Fourteenth Amendment governed his claim, not the Eighth Amendment). In his opposition, Plaintiff does not dispute this point. Instead, he argues that he plausibly states a violation of his Eighth Amendment rights, *see* ECF No. 20 at 7–10, which are enforceable against Individual Defendants through the Fourteenth Amendment in an action brought pursuant to § 1983. *See Farmer v. Kavanagh*, 494 F. Supp. 2d 345, 353 n.25 (D. Md. 2007 ("[Plaintiff's] federal constitutional claims under the Eighth and Fourteenth Amendments are brought pursuant to 42 U.S.C. § 1983; the Eighth Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment.").

The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual punishment," U.S. Const. amend. VIII, and "protects inmates from inhumane treatment and conditions while imprisoned[,]" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). An Eighth Amendment claim based on deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, prison officials were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994); *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017).

Defendants' argument focuses on the subjective prong. They contend that they lacked knowledge that Plaintiff's placement on an upper tier created a substantial risk of serious harm because a "Bottom Tier Only" alert was not entered into JMS until after Plaintiff's fall. At this stage of the proceedings, however, Defendants' argument fails.

As discussed above, Defendants' argument depends upon records and other evidence outside the pleadings that this Court declines to consider in resolving the present motion. The Amended Complaint alleges that medical personnel identified Plaintiff as requiring lower-tier housing, entered corresponding restrictions into his medical records and JMS, and communicated those restrictions to appropriate BCDC staff, including Wallace-Tomlin. Am. Compl. ¶¶ 26–29.

The Amended Complaint further alleges that Wallace-Tomlin personally observed Plaintiff's significant mobility impairments, including his use of a cane and walking boot and his inability to ambulate with a normal gait, before assigning him to housing that required routine use of stairs. *Id.* ¶¶ 33–35. In addition, the Amended Complaint includes allegations that, when escorting Plaintiff to his constitutionally unsafe housing placement, Sterrette observed Plaintiff, his use of medical devices, and limitations on his ability to ambulate with a regular gait. *Id.* ¶¶ 39–40. Accepting these allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Complaint indicates that Individual Defendants were aware of a substantial risk of harm posed by assigning Plaintiff to an upper-tier housing unit.

Defendants' qualified immunity argument likewise fails at this juncture. "Qualified immunity bars § 1983 actions against government officials in their individual capacities 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Barrett v. PAE Gov't Servs., Inc.*, 975 F.3d 416, 428 (4th Cir. 2020) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018)) (cleaned up). Qualified immunity is an affirmative defense. *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 305 (4th Cir. 2006). "The plaintiff bears the burden of proof on the first question—*i.e.*, whether a constitutional violation occurred[,]" and "[t]he defendant bears the burden of proof on the second question—*i.e.*, entitlement to qualified immunity." *Henry v. Purnell*, 501 F.3d 374, 377–78 (4th Cir. 2007) (internal citations omitted); *see also Stanton v. Elliott*, 25 F.4th 227, 233 n.5 (4th Cir. 2022). The qualified immunity inquiry begins by "determining 'the precise right' at issue. *Tarashuk v. Givens*, 53 F.4th 154, 163 (4th Cir. 2022). The Fourth Circuit has deemed "sufficiently precise" "the right of prisoners . . . to be free from [prison] officials' deliberate indifference to their known medical needs." *Id.* (quoting *Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016)).

Again, taking the allegations in the Amended Complaint as true, Plaintiff plausibly claims that Individual Defendants deliberately disregarded a serious medical need by assigning Plaintiff, a severely mobility-impaired inmate, to upper-tier housing despite obvious indications that he could not safely navigate stairs. It has long been clearly established that prison officials violate the Eighth Amendment when they act with deliberate indifference to an inmate's serious medical needs or substantial risk of serious harm. *See Farmer*, 511 U.S. at 834–37; *Estelle*, 429 U.S. at 104–06; *Scinto*, 841 F.3d at 236.

Defendants argue that non-medical officers are entitled to rely on the medical judgments of healthcare personnel. ECF No. 17-1 at 10. But Plaintiff alleges that BCDC custodial staff, including Wallace-Tomlin, was specifically advised of Plaintiff's housing restriction based on his physical condition by medical personnel. Am. Compl. ¶¶ 26–29. Moreover, Plaintiff alleges that each Individual Defendant personally observed Plaintiff's obvious physical limitations. Accepting Plaintiff's allegations as true and drawing all reasonable inferences in his favor, his need for lower tier housing was or should have been known to each Individual Defendant, but each Individual Defendant deprived Plaintiff of housing his physical condition required. Defendants dispute Plaintiff's allegations, but, again, these disputes cannot be resolved at the pleading stage. Because the qualified-immunity analysis turns on factual disputes concerning what each Individual Defendant knew and when they knew it, dismissal on qualified-immunity grounds is inappropriate at this stage. *See Miles v. Bollinger*, 979 F.2d 848 (4th Cir. 1992) (noting that ruling on qualified immunity is inappropriate at early stage of proceedings where the defense "turns on an interpretation of facts which are in dispute"); *McDaniel v. Maryland*, Civ. No. RDB-10-00189, 2010 WL 3260007, at *8 (D. Md. Aug. 18, 2010) ("This Court finds that the qualified immunity issue, which requires a fact-dependent inquiry, cannot be resolved at this stage of the case.").

Defendants' motion to dismiss Count III is denied.

**C. Count IV: Negligence**

In Count IV of the Amended Complaint, Plaintiff asserts a claim for negligence under Maryland law against all Defendants. Defendants argue that Baltimore County is immune from Plaintiff's negligence claim under Maryland's Local Government Tort Claims Act, and Individual Defendants are entitled to public official immunity against this claim. *See* ECF No. 17-1 at 10. Plaintiff does not meaningfully respond to these arguments and therefore concedes to dismissal of Count IV. *See Reeves v. Univ. of Maryland Cap. Region Health*, Civ. No. DKC 23-2169, 2024 WL 3276176, at *3 (D. Md. July 2, 2024) (citing *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (holding that in failing to respond to the defendant's arguments for why her claim should be dismissed, a plaintiff abandoned her claim)).

As previously explained by Judge Hollander of this Court, "counties in Maryland enjoy governmental immunity from negligence actions when the conduct on which the suit is based is governmental, not proprietary." *Doe v. Cmty. Coll. of Balt. Cnty.*, 595 F. Supp. 3d 392, 411 (D. Md. 2022) (collecting cases); *see also Gelin v. Maryland*, 132 F.4th 700, 716 (4th Cir. 2025) ("And, under Maryland common law, Baltimore County itself has immunity for running a detention center—a governmental function if there ever were one."). Additionally, "[c]ommon law public official immunity applies to 'public officials (as opposed to mere employees) who perform negligent acts during the course of their discretionary (as opposed to ministerial) duties.'" *Cooper v. Rodriguez*, 118 A.3d 829, 848 (Md. 2015) (citation omitted). Because Defendants are entitled to governmental immunity and public official immunity from Plaintiff's negligence claim, Count IV must be dismissed.

**D. Count V: Gross Negligence**

In Count V of the Amended Complaint, Plaintiff asserts a claim for gross negligence against Individual Defendants. As explained below, the Court finds this claim to be plausible and therefore denies Defendants' motion to dismiss it.

Under Maryland law, gross negligence "is an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Anne Arundel Cnty. v. Reeves*, 252 A.3d 921, 936 (Md. 2021) (citation omitted). It is "something *more* than simple negligence, and likely more akin to reckless conduct." *Id.* (emphasis in original and citation omitted). The Supreme Court of Maryland has explained that "gross negligence is an exception to common law public official immunity; in other words, if a public official's actions are grossly negligent, the public official is not entitled to common law public official immunity." *Cooper*, 118 A.3d at 854.

Defendants argue that the Amended Complaint does not include enough facts to show that Individual Defendants acted with the state of mind required for a gross negligence claim. *See* ECF No. 17-1 at 12–13. Once again, the thrust of Defendants' argument depends upon accepting their version of events—namely, that "at the time of Plaintiff's fall, no Defendant knew that he was only to be housed on the bottom tier." *Id.* at 13. But, as explained *supra*, the Court must accept Plaintiff's allegations as true at this stage of the proceedings. Plaintiff alleges that Individual Defendants placed him in a second-floor housing unit despite their awareness that he suffered from severe mobility impairments, used a cane and walking boot, and could not safely navigate stairs. *See, e.g.*, Am. Compl. ¶¶ 33–35, 108. Plaintiff further alleges that Individual Defendants consciously disregarded CRNP Brooks's screening assessment and corresponding "Identification of Special Needs" form, which required lower-tier housing, as well as information contained in

Plaintiff's electronic health records and their own observations of his physical condition. *Id.* ¶¶ 26–29, 109. According to the Amended Complaint, Defendants understood that Plaintiff required lower-tier housing accommodations but still placed him in an upper-tier cell, despite the availability of lower-tier housing. *Id.* ¶¶ 35, 110–14. Taking these allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Court finds plausible Plaintiff's claim that Defendants' conduct amounted to gross negligence. Defendants knowingly exposed Plaintiff to an obvious risk of serious physical injury by requiring him to traverse stairs despite his severe and apparent mobility limitations. Plaintiff's allegations are sufficient, at the pleading stage, to support a claim for gross negligence. Accordingly, Defendants' motion to dismiss the gross negligence claim in Count V is denied.

**E. Count VI: Articles 24 and 26 of the Maryland Declaration of Rights**

In Count IV of his Amended Complaint, Plaintiff claims that Individual Defendants violated Articles 24 and 26 of the Maryland Declaration of Rights. Am. Compl. ¶¶ 117–120.

"Articles 24 and 26 of the Maryland Declaration of Rights are the state constitutional counterparts to the Fourteenth and Fourth Amendments, and both provisions are ordinarily interpreted in pari materia with their federal analogs." *Meyers v. Baltimore County*, 981 F. Supp. 2d 422, 430 (D. Md. 2013). Specifically, Article 24 provides "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Md. Const. Decl. of Rts. art. 24. And Article 26 states "[t]hat all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted." Md. Const. Decl. of Rts. art. 26. By contrast, Articles 16 and 25 of the

Maryland Declaration of Rights "are construed in pari materia with the Eighth Amendment."[5] *Jordan v. Davis*, Civ. No. ELH-22-1541, 2023 WL 2478862, at *1 n.4 (D. Md. Mar. 13, 2023).

Plaintiff's Article 26 claim fails because the Amended Complaint does not allege any facts implicating constitutional protections against unreasonable and warrantless searches and seizures. Plaintiff does not challenge a search, seizure, arrest, or other governmental intrusion that would fall within the ambit of Article 26 or the Fourth Amendment. Rather, his claims arise from the alleged denial of appropriate housing accommodations while incarcerated.

Plaintiff's Article 24 claim likewise fails. As discussed above, Plaintiff was a convicted prisoner serving a sentence at the time of the events in question. Accordingly, his constitutional claims are governed by the Eighth Amendment's prohibition on cruel and unusual punishment—not federal or state constitutional guarantees of due process.[6]

The Court's analysis in *Jones v. Queen Anne's Cnty., Md.*, Civ. No. 24-1333-JRR, 2025 WL 744054 (D. Md. Mar. 7, 2025), is instructive. There, Judge Rubin of this Court concluded that claims arising from the alleged denial of medical care during post-conviction incarceration were properly analyzed under the Eighth Amendment rather than the Fourth or Fourteenth Amendments. *Id.* at *5–9. The Court further explained that, because the plaintiff's claims were governed by the Eighth Amendment, the analogous provisions of the Maryland Declaration of Rights were Articles 16 and 25—not Article 24. *Id.*

The same reasoning applies here. Plaintiff's allegations concern the conditions of his confinement and Defendants' alleged deliberate indifference to his serious medical needs while he

---

[5] For its part, Article 25 provides "[t]hat excessive bail ought not to be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted, by the Courts of Law." Md. Const. Decl. of Rts. art. 25.

[6] Notably, Plaintiff did not oppose Defendants' argument that his federal constitutional claim under § 1983 is governed by the Eighth Amendment—not the due process clause of the Fourteenth Amendment.

was serving a criminal sentence. Such claims are properly analyzed under the Eighth Amendment—not Articles 24 and 26.

Defendants' motion to dismiss Count VI is granted.

## IV. ORDER

For the foregoing reasons, it is by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Defendants' Motion to Dismiss (ECF No. 17) is GRANTED IN PART and DENIED IN PART;
2. The motion is GRANTED as to Counts IV and VI of the Amended Complaint, which are DISMISSED without prejudice;
3. The motion is DENIED as to Counts I, II, III, and V of the Amended Complaint.

August 26, 2026
Date

/S/
Matthew J. Maddox
United States District Judge